## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**JOSEPH P. MCGUIGAN,**
         **Plaintiff**

**v.**                                             No._____

**UNITED STATES SECRETARY OF HOUSING
AND URBAN DEVELOPMENT,**
         **Defendant**

## **COMPLAINT**

1.  Plaintiff, Joseph P. McGuigan, is an adult individual with an address of 9802 Montour Street, Philadelphia, PA 19115.

2.  Defendant, United States Secretary of Housing and Urban Development, has an address of 100 East Penn Square, Philadelphia, PA 19107.

3.  On March 20, 1995, Defendant was conveyed the premises known as 5916 Jackson Street, Philadelphia, PA (the "Premises").  A copy of the recorded deed of conveyance to Defendant is attached hereto as Exhibit "A", and the provisions of same are hereby incorporated by reference as if fully set forth.

4.  Subsequently, on October 19, 1995, the Premises was conveyed from Defendant to Plaintiff.

5.  However, for reasons unknown, the deed of conveyance of the Premises from Defendant to Plaintiff was lost and never recorded.

6.   A copy of a policy of title insurance issued to Plaintiff's then-lender on October 19, 1995,  evidencing the contemplated transfer of the Premises to Plaintiff as of that date, is attached hereto as Exhibit "B", and the provisions of same are hereby incorporated by reference as if fully set forth.

7.   Defendant has solely and consistently paid real estate taxes on the Premises since October 19, 1995.

8.   Defendant has solely and consistently kept the Premises covered by insurance since October 19, 1995.

9.   From October 19, 1995 and until the residential improvements on the Premises were destroyed in a fire in 2023, Plaintiff had resided at and maintained the Premises, and has had full use and enjoyment of the Premises.

10. At all times relevant since October 19, 1995, Defendant has taken no action(s) concerning the Premises, and has not occupied same.

11. It is believed and therefore averred that Defendant presently has no interest in the Premises, and/or in the use and/or maintenance thereof.

12.  It is further believed and therefore further averred that Defendant has not indicated nor manifested any desire to hold any interest(s) in and/or to the Premises.

13.  However, despite all of the foregoing and despite demand made, Defendant has failed and/or refused to relinquish record title of the Premises to Plaintiff.

14.  This Honorable Court has jurisdiction over the instant case pursuant to 28 U.S.C. sections 1331 and 2409a, and pursuant to the pendent jurisdiction provided this Honorable Court pursuant to 28 U.S.C. section 1367.

## COUNT I—QUIET TITLE PURSUANT TO 28 U.S.C. SECTION 2409a

15.      Plaintiff hereby incorporates by reference the provisions of paragraphs 1 through

14 above, as if the same were more fully set forth.

16.     Quiet title actions against the United States of America or its departments or divisions are governed by the provisions of 28 U.S.C. section 2409a.

17.     Accordingly, for all of the above reasons, title to the Premises should be quieted in Plaintiff solely, and any right, title, and/or interest of Defendant to the Premises should be cancelled/divested, as of October 19, 1995 and continuing, pursuant to 28 U.S.C. section 2409a.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter an Order: (a) providing that any right, title, and/or interest that Defendant has or may have in/to the Premises, is divested and is null and void, effective October 19, 1995 and continuing; (b) confirming that Plaintiff holds sole fee simple title to the Premises, effective October 19, 1995 and continuing; (c) providing that Defendant may not assert any claim in/to the Premises inconsistent with Plaintiff's sole fee simple title thereto; (d) providing that a certified copy of such Order be recorded with the Philadelphia Department of Records and indexed in/with the land records concerning the Premises, without the payment of any state or local real estate transfer taxes; and (e) providing such other and further relief as the Court deems fair and just.

## COUNT II-ADVERSE POSSESSION
### (in the alternative to Count I)

18.     Plaintiff hereby incorporates by reference the provisions of paragraphs 1 through 17 above, as if the same were more fully set forth.

19.     Despite the passage of more than twenty-one (21) years from October 19, 1995, neither Defendant nor anyone on Defendant's behalf has/have made any claim, direct or indirect, in and/or to the Premises.

20.     Further, for more than twenty-one (21) years since October 19, 1995, Plaintiff has had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the Premises.

21.     Accordingly, for all of the above reasons, Plaintiff is entitled to sole ownership of the Premises via adverse possession of same.

WHEREFORE, in the alternative to Count I above, Plaintiff respectfully requests this Honorable Court to enter an Order: (a) providing that any right, title, and/or interest that Defendant has or may have in/to the Premises, is divested and is null and void, effective October 19, 1995 and continuing; (b) confirming that Plaintiff holds sole fee simple title to the Premises, effective October 19, 1995 and continuing; (c) providing that Defendant may not assert any claim in/to the Premises inconsistent with Plaintiff's sole fee simple title thereto; (d) providing that a certified copy of such Order be recorded with the Philadelphia Department of Records and indexed in/with the land records concerning the Premises, without the payment of any state or local real estate transfer taxes; and (e) providing such other and further relief as the Court deems fair and just.

Respectfully submitted,

___/s/ Brian H. Smith_____
BRIAN H. SMITH, ESQUIRE
ID #65627
Fidelity National Law Group
1515 Market Street, Suite 1410
Philadelphia, PA 19102
(267) 608-1732
Fax: (215) 241-8794
Brian.H.Smith@fnf.com
Counsel for Plaintiff

BAYER, E. #202971

No. 750-S  CORPORATION DEED.                    D  092Printed for and Sold by John C. Clark Co., 1326 Walnut St., Phila.

117-7-83 ✓

# This Indenture Made the _____20th_____

day of _____MARCH_____ in the year of our Lord one thousand nine

hundred and _____NINETY-FIVE_____                    **Between**  COMMONWEALTH FEDERAL

SAVINGS ASSOCIATION

(hereinafter called the Grantor  ), of the one part, and

SECRETARY OF HOUSING AND URBAN DEVELOPMENT, a Federal Agency

(hereinafter called the Grantee  ), of the other part

**Witnesseth,**                    That the said    Grantor

for and in consideration of the sum of

ONE DOLLAR ($1.00) and other good and valuable consideration                    lawful

money of the United States of America, unto    it    well and truly paid by the said Grantee

at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged,    has

granted, bargained and sold, aliened, enfeoffed, released and confirmed, and by these presents    does

grant, bargain and sell, alien, enfeoff, release and confirm unto the said Grantee  , its  successors

and assigns,

ALL THAT CERTAIN lot or piece of ground with the brick messuage or tenement thereon
erected, described according to a Survey and Plan thereof made by J.H. Webster, Jr
Esquire, Surveyor and Regulator of the 10th Survey District, on the 5th day of Jul
A.D., 1911, as follows, to wit:  SITUATE on the Northwesterly side of Jackson Stre
at the distance of one hundred fifty-five feet ten inches (155'10") Southwestwardl
from the Southwesterly side of Comly Street in Wissinoming in the forty-first Ward
formerly the fifty-fifth Ward, of the City of Philadelphia aforesaid.  CONTAINING
front or breadth on said Jackson Street twenty-two feet, two inches (22'2") and ex
tending in that width in length or depth Northwestwardly between parallel lines at
right angles to said Jackson Street (the Northeasternmost line thereof passing thr
the center of the party wall between these premises and premises now or late of
William A. Bender etux, adjoining on the Northeast) two hundred feet (200').

BEING NO. 5916 Jackson Street.

"A"

D 0921 517

BEING the same premises which John D. Green, Sheriff of Philadelphia County by Deed Poll dated 2/27/95 and recorded 4/4/95 in the Office for the Recording of Deeds in Book No. VCS 836 page 326 conveyed to Commonwealth Federal Savings Association.

D 0921 510

**Together** with all and singular the **buildings**
Improvements, Ways, Streets, Alleys, Passages, Waters, Water-courses, Rights, Liberties, Privilege
Hereditaments and Appurtenances, whatsoever thereunto belonging, or in any wise appertaining, an
the Reversions and Remainders, Rents, Issues and Profits thereof; and all the Estate, Right, Titl
Interest, Property, Claim and Demand whatsoever of **the said Grantor, as well**
in law as in equity, or otherwise howsoever, of, in, and to the same and every part thereof.

**To have and to hold** the said **lot or piece of ground described**
with the messuage or tenement thereon erected.
Hereditaments and Premises hereby granted, or mentioned and intended so to be, with the Appurte
nances, **unto the said Grantee, its Successors**
and Assigns, to and for the only proper use and behoof of the said **Grantor, its Successo**
and Assigns, forever.

**And** the said **Grantor, for its Successors and Assigns**

does b
these presents, covenant, grant and agree, to and with the said **Grantee, its Successors**
and Assigns, that **it** the said **Grantee, its Successors and Assigns**

all and singular the

Hereditaments and Premises herein above described and granted, or mentioned and intended so to be
with the Appurtenances, unto the said **Grantee, its Successors**

and Assigns
against **the said Grantor, its Successors and Assigns** and against all and ever
Person or Persons whomsoever lawfully claiming or to claim the same or any part thereof, by, fron
or under **it, them** or any of them,
shall and will

WARRANT and forever DEFEND

**In Witness Whereof** the said Corporation has caused its corporate seal to be
hereunto affixed this **20th** day of **March** , 1995

**Sealed and Delivered**
IN THE PRESENCE OF US:

RESOLUTION TRUST CORPORATION AS RECEIV
COMMONWEALTH FEDERAL SAVINGS ASSOCIATI

*Paul A. Bell*

Paul A. Bell

*Marcus H. Halsey*

Y: MARCUS H. HALSEY, ATTORNEY-IN-FACT

*Richard Minor*

Richard Minor

ATTEST: *Richard A. Hipp*

Richard A. Hipp

# PHILADELPHIA REAL ESTATE

# TRANSFER TAX CERTIFICATION

**D  0921 519**

DATE RECORDED

CITY TAX PAID

Complete each section and file in duplicate with Recorder of Deeds when (1) the full value/consideration is not set forth in the deed; (2) when the deed is without consideration, or by gift, or (3) a tax exemption is claimed. If more space is needed, attach additional sheet(s).

**A. CORRESPONDENT** - All inquiries may be directed to the following person:

NAME
FRANK FEDERMAN, ESQ.

TELEPHONE NUMBER
AREA CODE: 215 563-7000

STREET ADDRESS
Two Penn Center Plaza

CITY
Philadelphia

STATE
PA

ZIP CODE
19102

**B. TRANSFER DATA**

DATE OF ACCEPTANCE OF DOCUMENT

GRANTOR(S)/LESSOR(S)
COMMONWEALTH FEDERAL SAVINGS ASSOCIATION

GRANTEE(S)/LESSEE(S) SECRETARY OF HOUSING AND
URBAN DEVELOPMENT

STREET ADDRESS
13111 Northwest Freeway

STREET ADDRESS
The Wanamaker Bldg., 100 Penn Sq. Ea

CITY
Houston

STATE
TX

ZIP CODE
77040-6311

CITY
Philadelphia

STATE
PA

ZIP CODE
19107-3390

**C. PROPERTY LOCATION**

STREET ADDRESS
5916 Jackson St. Phila., PA 19135

CITY, TOWNSHIP, BOROUGH
City of Philadelphia

COUNTY
Philadelphia

SCHOOL DISTRICT
Philadelphia

TAX PARCEL NUMBER
16514-206

**D. VALUATION DATA**

| ACTUAL CASH CONSIDERATION | 2. OTHER CONSIDERATION | 3. TOTAL CONSIDERATION |
|---|---|---|
| $1.00 | + -0- | = $1.00 |
| COUNTY ASSESSED VALUE $12,864.00 | 5. COMMON LEVEL RATIO FACTOR x 3.48 | 6. FAIR MARKET VALUE $44,766.72 |

**E. EXEMPTION DATA**

AMOUNT OF EXEMPTION
100%

1B. PERCENTAGE OF INTEREST CONVEYED
100%

2. Check Appropriate Box Below for Exemption Claimed

☐ Will or intestate succession _____
   *(NAME OF DECEDENT)*          *(ESTATE FILE NUMBER)*

☐ Transfer to Industrial Development Agency.

☐ Transfer to agent or straw party. (Attach copy of agency/straw party agreement).

☐ Transfer between principal and agent. (Attach copy of agency/straw trust agreement). Tax paid prior deed $_____

☐ Transfers to the Commonwealth, the United States, and instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (Attach copy of resolution).

☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number_____ Page Number_____
   Mortgagee (grantor) sold property to Mortgagor (grantee) (Attach copy of prior deed).

☐ Corrective deed (Attach copy of the prior deed).

☒ Other (Please explain exemption claimed, if other than listed above.) Transfer to Secretary of
   Housing and Urban Development is Exempt Pursuant to Sec. #91.193
   (b) (3) (v) of the Pennsylvania Realty Transfer Tax Regulations.
   Government Agency.

Under penalties of law or ordinance, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

SIGNATURE OF CORRESPONDENT OR RESPONSIBLE PARTY

FRANK FEDERMAN

DATE

D 0921 520

On May 23, 1989, COMMONWEALTH SAVINGS ASSOCIATION, ("CSA") Houston, Texas was placed in receivership, and the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed Receiver thereof, and by operation of law, FSLIC succeeded to all rights, titles, powers and privileges of CSA; and

On May 25, 1989, pursuant to that certain Acquisition Agreement between FSLIC, as Receiver for CSA, and Commonwealth Federal Savings Association ("CFSA"), Houston, Texas, a Federal Mutual Savings Association, CFSA acquired from FSLIC as Receiver for CSA, all of the receiver's rights, titles and interest in and to all CSA's assets that Receiver owned or held.

On June 21, 1991, CFSA was placed in receivership, and the Resolution Trust Corporation ("RTC") was appointed Receiver thereof, and by operation of law, RTC succeeded to all rights, titles, powers and privileges of CFSA.

The undersigned RTC as Receiver of CFSA is the legal and equitable owner of ALL THAT CERTAIN lot or Piece of ground described above.

STATE OF TEXAS

~~Commonwealth of Pennsylvania~~

O 0921 521

County of  HARRIS

On this, the    20th      day of   March          , 19 95 , before me,
                              Marcus H. Halsey                                    the undersigned officer

personally appeared        Marcus H. Halsey              who acknowledged himself (herself)
to be the    Attorney-in-Fact         of Resolution Trust Corporation
a corporation, and that  he as such  Attorny-In-Fact          , being authorized to do so, executed
the foregoing instrument for the purposes therein contained by signing the name of the corporation by
himself (herself) as  Attorney-in-Fact.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

CYNTHIA McCLOUD
MY COMMISSION EXPIRES
June 14, 1997

*Cynthia McCloud*
Notary Public

95 JUL -7 AM 6: 35

**DEED**

000006

COMMONWEALTH FEDERAL SAVINGS
ASSOCIATION

TO:

SECRETARY OF HOUSING AND URBAN
DEVELOPMENT, a Federal Agency

Premises: 5916 Jackson St.
            Philadelphia, PA 19135

750-S    John C. Clark Co., Phila    1994

FEDERMAN AND PHELAN
Suite 900
Two Penn Center Plaza
Philadelphia, PA 19102
563-7000

ATTENTION
SINGLE FAMILY PROPERTY
DISPOSITION BRANCH

address of the above-named Grantee
e Wanamaker Bldg., 100 Penn Sq. East
ilade phia, PA 19107-3390

On behalf of the Grantee

```
                          Prior Policy Amount:        $39,900.00
                          Prior Policy Date  :          02/05/82

                             Issued with Policy No. 211026911
```

POLICY OF TITLE INSURANCE

SCHEDULE A

AMOUNT OF INSURANCE:  $53,900.00          POLICY NO:   558033174
                                          FILE NO:     A051448PC
FILED RATE:    $542.75 - Basic


DATE OF POLICY:  The date shown below or the date of recording of the
instruments referred to in Item 4 whichever is the later.

                          October 19, 1995

1.  NAME OF INSURED:

    Columbia National Inc. and/or The Secretary of Housing and Urban
    Development, its successors and/or assigns as their interests may
    appear

2.  THE ESTATE OR INTEREST IN THE LAND DESCRIBED HEREIN AND WHICH IS
    COVERED BY THIS POLICY IS:

    Fee simple

3.  THE ESTATE OR INTEREST REFERRED TO HEREIN IS AT DATE OF POLICY
    VESTED IN:

    Joseph McGuigan

4.  THE MORTGAGE, HEREIN REFERRED TO AS THE INSURED MORTGAGE, AND THE
    ASSIGNMENTS THEREOF, IF ANY, ARE DESCRIBED AS FOLLOWS:

    Mortgage of $53,900.00 from Joseph McGuigan to Columbia National
    Inc. and/or The Secretary of Housing and Urban Development, its
    successors and/or assigns as their interests may appear dated
    October 19, 1995

5.  THE LAND REFERRED TO IN THIS POLICY IS DESCRIBED AS SET FORTH IN THE
    INSURED MORTGAGE AND IS IDENTIFIED AS FOLLOWS:

    5916 Jackson St.
    Philadelphia County Pennsylvania



    Countersigned:



    Authorized Officer


PA 20 ALTA Loan Policy - 1970
(Amended 10/17/1970 and 10/17/1984)

"B"

The following endorsement(s) are attached hereto: 300, 100, 8.1

PA 20 ALTA Loan Policy - 1970
(Amended 10/17/1970 and 10/17/1984)

Policy No.   558033174

File No.    A051448PC

EXHIBIT A

BLOCK 117 N 7 LOT 83

ALL THAT CERTAIN lot or piece of ground with the brick messuage or tenement thereon erected, described according to a Survey and Plan thereof made by J.H. Webster, Jr., Esquire, Surveyor and Regulator of the 10th Survey District, on the 5th day of July A.D., 1911, as follows, to wit:

SITUATE on the Northwesterly side of Jackson Street at the distance of one hundred fifty-five feet, ten inches Southwestwardly from the Southwesterly side of Comly Street in Wissinoming in the Forty-first Ward, formerly the fifty-fifth Ward, of the City of Philadelphia aforesaid.

CONTAINING in front or breadth on said Jackson Street, twenty-two feet, two inches and extending in that length or depth Northwestwardly between parallel lines at right angles to said Jackson Street (the Northeasternmost line thereof passing through the center of the party wall between these premises and premises now or late of William A. Bender, and wife adjoining on the Northeast) two hundred feet.

BEING NO. 5916 Jackson Street.

PA 20 ALTA Loan Policy - 1970
(Amended 10/17/1970 and 10/17/1984)

Policy No.   558033174

File No.   A051448PC

SCHEDULE B
Part 1

This policy does not insure against loss or damage by reason of the
following:

1.    Unrecorded easements, discrepancies or conflicts in boundary
      lines, shortages in area and encroachments which an accurate
      and complete survey would disclose.

2.    Restrictions as in Deed Book GGP 243 page 504, GGP 43 page 344
      and GGP 241 page 87.

3.    1996 10th Cycle Water and Sewer Rents not yet due and payable.

PA 20 ALTA Loan Policy - 1970
(Amended 10/17/1970 and 10/17/1984)

INDUSTRIAL VALLEY TITLE INSURANCE COMPANY
A Reliance Group Company
1700 Market Street, Philadelphia, Pa. 19103-3990

ENDORSEMENT

Issued with Policy No. 558033174

POLICY NO.   A051448PC

The Company insures that the covenants, conditions and restrictions
affecting the title to the land contained in Deed Book GGP 243 page 504,
GGP 43 page 344 and GGP 241 page 87 have not been violated and that a
future violation thereof will not cause a forfeiture or reversion of
title.

The total liability of the Company under said policy and any endorsement
thereon shall not exceed, in the aggregate, the face amount of said
policy and costs which the Company is obligated, under the conditions
and stipulations thereof, to pay.

This endorsement is made a part of said policy and is subject to the
schedule, conditions and stipulations therein, except as modified by the
provisions hereof.

Nothing herein contained shall be construed as extending or changing the
effective date of said Policy, unless otherwise expressly stated.

Dated:   10/19/95

_____
Authorized Signatory

TRIBOP - PA ENDORSEMENT 100 (Restrictions no apparent existing
violation). LOAN POLICY ONLY

INDUSTRIAL VALLEY TITLE INSURANCE COMPANY
A Reliance Group Company
1700 Market Street, Philadelphia, Pa. 19103-3990

ENDORSEMENT

Issued with Policy No. 558033174

POLICY NO.   A051448PC

The Company eliminates from its loan policy the exception reading as follows:

Unrecorded easements, discrepancies or conflicts in boundary lines or shortages in area and encroachments which an accurate and complete survey would disclose.

and further insures, except as set forth above, against loss by reason of encroachment, other than by party walls, whether by the building on the land encroaching upon adjacent property or by any building on adjacent property encroaching upon the said land.

The total liability of the Company under said policy and any endorsement thereon shall not exceed, in the aggregate, the face amount of said policy and costs which the Company is obligated, under the conditions and stipulations thereof, to pay.

This endorsement is made a part of said policy and is subject to the schedule, conditions and stipulations therein, except as modified by the provisions hereof.

Nothing herein contained shall be construed as extending or changing the effective date of said Policy, unless otherwise expressly stated.

Dated:   10/19/95

Authorized Signatory

TRIBOP - PA ENDORSEMENT 300 (Mortgage Survey Exception).
LOAN POLICY ONLY

INDUSTRIAL VALLEY TITLE INSURANCE COMPANY
A Reliance Group Company
1700 Market Street, Philadelphia, Pa. 19103-3990


ENDORSEMENT

Issued with Policy No. 558033174

Policy No. A051448PC


The insurance afforded by this endorsement is only effective if the
land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by
reason of lack of priority of the lien of the insured mortgage over:

a) any environmental protection lien which, at Date of
Policy, is recorded in those records established under
the state statutes at Date of Policy for the purpose of
imparting constructive notice of matters relating to
real property to purchasers for value and without
knowledge, or filed in the records of the clerk of the
United States District Court for the district in which
the land is located, except as set forth in Schedule B;
or

b) any environmental protection lien provided for by
any state statute in effect at Date of Policy,
except environmental protection liens provided for
by the following state statutes:

The Land and Water Conservation and Reclamation Act, Act of
January 19, 1968, P.L. 996 (32 P.S. ss 5101, et seq.)


This endorsement is made a part of the policy and is subject to all
of the terms and provisions thereof and of any prior endorsements
thereto.  Except to the extent expressly stated, it neither modifies
any of the terms and provisions of the policy and any prior
endorsements, nor does it extend the effective date of the policy and
any prior endorsements, nor does it increase the face amount thereof.

Dated: 10/19/95


INDUSTRIAL VALLEY TITLE INSURANCE COMPANY

BY:


TIRBOP - PA ENDORSEMENT 900 (ALTA ENDORSEMENT 8.1)
(Environmental Protection Lien) RESIDENTIAL LOAN POLICY ONLY

## 5. PROOF OF LOSS OR DAMAGE.

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph shall terminate any liability of the Company under this policy as to that claim.

## 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

In case of a claim under this policy, the Company shall have the following options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 7. DETERMINATION AND EXTENT OF LIABILITY.

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time of loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

## 8. LIMITATION OF LIABILITY.

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for : (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

## 9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

## 10. LIABILITY NONCUMULATIVE.

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

## 11. PAYMENT OF LOSS.

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definately fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

## 12. SUBROGATION UPON PAYMENT OR SETTLEMENT.

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any , lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a) (ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

## 13. ARBITRATION.

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

## 14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not on based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or a validating officer or authorized signatory of the Company.

## 15. SEVERABILITY.

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

## 16. NOTICES, WHERE SENT.

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to INDUSTRIAL VALLEY TITLE INSURANCE COMPANY, Eight Penn Center, Philadelphia, Pennsylvania 19103-2198.

ORIGINAL     Valid Only If Face Page and Schedules A and B Are Attached

American Land Title Association
Loan Policy
(10-17-92)

## POLICY

## OF

## TITLE

## INSURANCE



*Issued by*

## Industrial Valley Title Insurance Company

**HOME OFFICE**

EIGHT PENN CENTER
PHILADELPHIA, PA 19103-2198

B 1191-9

**ISSUED BY**

## ⬢ IVT **Industrial Valley Title Insurance Company**

**LOAN POLICY OF TITLE INSURANCE**

POLICY NUMBER

**558-033174**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, INDUSTRIAL VALLEY TITLE INSURANCE COMPANY, a Pennsylvania corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material: (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, INDUSTRIAL VALLEY TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.



*418799*
*229680 McGurgan*

**INDUSTRIAL VALLEY TITLE INSURANCE COMPANY**

Attest: *James J W Lynch Jr*        Secretary

[SEAL: INDUSTRIAL VALLEY TITLE INSURANCE COMPANY · CORPORATE SEAL · 1963 · PENNSYLVANIA]

By: *[signature]*        President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

**1. DEFINITION OF TERMS.**

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1 (a) (iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE.**

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance: The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.**

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgement or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

Conditions and Stipulations Continued Inside Cover